F I L E D
 Clerk
 District Court
APR 13 2015
for the Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| **WANG XIAO TING,** Personal Representative of Wang Dao, deceased,<br><br>Plaintiff,<br><br>v.<br><br>**TASI TOURS & TRANSPORTATION, INC. and MAN BAO CORPORATION d/b/a WIN TOURS,**<br><br>Defendants. | Case No. 1:14-CV-00008<br><br>**DECISION AND ORDER DENYING DEFENDANT TASI TOURS' MOTION TO DISMISS** |

## I.   INTRODUCTION

Ms. Wang Dao ("Dao"), a young Chinese woman vacationing on Saipan, drowned in the shallow waters off Managaha Island in an area without lifeguards. Her representative and father, Mr. Wang Xiao Ting ("Wang"), sued the company that operates the only lifeguard station on the island for negligence, based on its failure to provide lifeguards in the location his daughter died.[1] That company, Tasi Tours & Transportation, Inc. ("Tasi Tours"), filed a motion to dismiss, arguing

---

[1] Wang also sued on the basis of the lifeguards' negligence for failing to use a defibrillator or oxygen on Dao when they were attempting to revive her. That issue is not before the Court in this motion. Nor is Wang's theory of liability against Win Tours.

1

that it has no duty to lifeguard the area in which Dao drowned because (1) relevant statutes and regulations preclude such a duty and (2) common law principles of negligence limit liability to those who create risks or land possessors, and the company neither created a risk nor possessed Managaha Island or the water in which Dao drowned. Because no statute or regulation bars liability, and because Tasi Tours possesses Managaha Island and the shallow waters immediately surrounding it for purposes of common law negligence, the Court concludes that Tasi Tours owed Dao a duty to exercise reasonable care. The Court will deny the motion to dismiss.[2]

## II.   FACTS ALLEGED

### a. The Accident

On April 16, 2012, Dao and a travel companion visited Managaha Island as part of a snorkeling package they purchased from co-defendant Win Tour. (Compl. ¶¶ 8-11, ECF No. 1.) Win Tour took Dao and other customers to an area without lifeguards and provided them with snorkeling equipment, telling them it was "safe to snorkel." (Compl. ¶¶ 11, 20.) Dao entered the water, staying in the "very shallow water close to the beach," while the other tourists ventured out further into "chest-deep water." (Compl. ¶¶ 20-21.) Left alone, there was no one present to help Dao when water entered her snorkel and she began to drown. (Compl. ¶ 21.) Five minutes later, the other tourists returned to the beach, saw Dao floating face down "almost on the beach," and called for aid. (Compl. ¶ 22.) Tasi Tours lifeguards came to the scene and performed CPR, but were unable to revive Dao. (Compl. ¶¶ 23-24.) Dao was taken to the hospital and pronounced dead from drowning. (Compl. ¶ 25.)

---

[2] In its motion to dismiss, Tasi Tours also moved to strike certain references to its parent company, JTB, from the Complaint. (ECF No. 7.) At a January 8, 2015 hearing, Wang agreed to strike all references to "JTB," and the Court granted the motion. (ECF No. 21.) All references to JTB are stricken from the Complaint.

*b. Management of Managaha Island* [3]

Managaha Island is owned by the Commonwealth of the Northern Mariana Islands ("Commonwealth" or "CNMI") and administered by the Department of Public Lands ("DPL"). *See* CNMI Const. art. XIV, § 2 (Managaha reserved for "cultural and recreational purposes"); 1 CMC §§ 2801-2810 (DPL duties). To facilitate tourism and public enjoyment of Managaha Island, DPL granted Tasi Tours an exclusive recreational concession. (*See* Defendant's Mot. Ex. A ("Concession Agreement," ECF No. 8-1) & Ex. B ("Amended Agreement," ECF No. 8-2).) As the exclusive concessionaire, Tasi Tours has the use of a "concession area" of approximately 11,203 square meters—a significant portion of the small island—containing improvements for food service, bathrooms and showers, gift shops, picnic areas, storage lockers, and accompanying infrastructure. *See* Concession Agreement 2-4 & Ex. 1 (map of Managaha Island and concession area). On Managaha Island, Tasi Tours has the exclusive right to sell food and beverages, rent or sell "water sports equipment, recreational equipment, or beach equipment and related supplies," conduct tours, sell goods, and provide for-profit entertainment. *Id.* at 2-3.

However, the Concession Agreement tasks Tasi Tours with a number of limitations and responsibilities in exchange for the exclusive concession. Tasi Tours cannot restrict common areas of the concession area to its own paying customers and cannot "prohibit the general public from using any beach on Managaha Island." *Id.* at 2. Additionally, Tasi Tours is charged with management and maintenance of the entire island, including: cleaning up any trash on a daily basis,

---

[3] This section provides facts alleged in the complaint as well as the concession agreements between Tasi Tours and the Department of Public Lands ("DPL"). The concession agreements were not attached to the pleadings, but the legal rights and obligations of Tasi Tours as explained in the agreements form the basis of Wang's claim and are integral to a finding of liability. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2005) (stating that the court may consider evidence outside the complaint in a motion to dismiss if: (1) the complaint refers to the document; (2) the document is central to plaintiff's claim; and (3) no party questions the authenticity of the attached document). At the January 8, 2015 hearing, the parties agreed that the Court may consider the agreements in this motion, and Tasi Tours provided certified copies of the Concession Agreement (Ex. A) and the Amended Agreement (Ex. B).

providing nighttime security, and keeping vegetation trimmed and paths in good repair. *Id.* at 6-7. Finally, the agreement requires Tasi Tours to lifeguard a roped swimming zone near the concession area. *Id.* at 14.

The cost of maintaining and protecting Managaha Island is borne by tourists. Visitors to the island who do not reside within the Commonwealth and tour operators are required to pay a "landing and user fee" upon reaching the island. *Id.* at 8. That fee pays for the "construction, maintenance, repair, and/or upkeep of the improvements, infrastructure, appearance, safety, and cleanliness of Managaha Island." Amended Agreement 3. DPL owns the funds, but Tasi Tours may use them to pay lifeguards, as well as other approved expenses. *Id.* at 7, 9 ("The cost of nighttime security, lifeguards, and rangers may be paid from the Landing and User Fee as each provides for public safety").

### III.    ANALYSIS

This motion asks the Court to determine the scope of Tasi Tours' duties, not just whether it has any duty to Dao. Plaintiff claims that Tasi Tours breached its duty to exercise reasonable care by providing lifeguarding service to less than 1% of the beach area at Managaha, and for failing to provide lifeguarding services to the most popular and best area for snorkeling. (Compl. ¶¶ 44(a)-(b).) Tasi Tours argues that it had no duty to provide lifeguards outside the zoned swimming area where Dao drowned for two principal reasons: first, because Commonwealth written law precludes such liability (Reply 4-6); and second, because Tasi Tours had no relationship with Dao and Dao drowned in the ocean, outside of any land Tasi Tours possessed (Reply 2-3, 6-12). Wang disagrees that any law prohibits liability in this matter, and argues that under the common law of negligence, Tasi Tours possessed Managaha Island and had a duty of reasonable care to safeguard Dao from ocean risks. (Opp'n 7-10.) The parties also dispute whether

4

CNMI public policy favors having lifeguards on beaches (Opp'n 10-13) or not (Reply 12-15).

### a. Jurisdiction

This is a diversity case: Tasi Tours is a Commonwealth corporation and Wang is a Chinese citizen. (Compl. ¶¶ 4-5.) The amount in controversy exceeds $75,000. (Compl. ¶ 1.) Accordingly, the Court has jurisdiction pursuant to 28 U.S.C. § 1332(a).

### b. Motion to Dismiss Standard

To survive a motion to dismiss for failure to state a claim on which relief can be granted, a complaint must contain "sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). Courts draw reasonable inferences in a plaintiff's favor, and a "well-pleaded complaint may proceed even if it appears that recovery is very remote and unlikely," but "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (internal quotation marks and citations omitted).

### c. CNMI Law

Because this is a diversity case, the Court applies the law of the Commonwealth. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("There is no federal common law."). Commonwealth law requires that "in the absence of written law," courts shall apply "the rules of the common law, as expressed in the restatements of the law approved by the American Law Institute." 7 CMC § 3401; *see Estate of Ogumoro v. Ko*, 2011 MP 11 ¶ 59 n.21 ("written law includes the NMI Constitution and NMI statutes, case law, court rules, legislative rules and administrative rules") (quotation marks omitted).

Tasi Tours argues that the Commonwealth's Lifeguard Act of 1998 and DPL regulations shield it from liability and prevent the Court from considering the common law. (Reply 5-7.) The

Court disagrees.

### d. The Lifeguard Act of 1998

The Lifeguard Act of 1998 states that "[a]ll hotels and property owners in the Commonwealth using swimming pools for commercial recreational purposes shall employ a qualified lifeguard who shall be on duty during the hours which the pool is held open for swimmers." 3 CMC § 5503. The statute defines "commercial recreational purposes" as "engaging in an activity for profit or gain and where guests and others are charged for services." 3 CMC § 5502(a). A person who violates the Act is subject to a fine "not more than $100 for each violation." 3 CMC § 5504. The Act does not apply to beachfront swimming areas.

However, prior to passage of the Lifeguard Act of 1998, Commonwealth law dating to the Trust Territory Administration required that hotel and property owners "using beachfront property and swimming pools for commercial recreational purposes" employ lifeguards. 3 CMC § 5503 (pre-August 14, 1998); *see* 3 CMC § 5502 Commission Comment ("The Legislature finds that the current provisions of 3 CMC [section 5503] . . . is outdated and no longer meets the needs of the Commonwealth's dynamic growing tourism sector. An update on these old provisions is needed to ensure that all lifeguards are certified with newer requirements."). Although the current statute does not apply to beachfront lifeguards, it nevertheless states that its "purpose" is to "protect the inhabitants of the Commonwealth as well as visitors in the use of ocean areas and swimming pools adjacent to commercial recreational areas." 3 CMC § 5501.

According to Tasi Tours, by repealing the requirement that beachfront property be protected by lifeguards, the legislature must have intended to eliminate negligence liability for the failure to post lifeguards in such areas. (Reply 5-6.) The canons of statutory construction counsel a different result.

6

Courts treat a repealed statute as if it never existed; repeals are retroactive. *See Caldwell v. Carmar Trading Co.*, 116 F. Supp. 546, 548 (D. Hawaii 1953) (but noting that "where the statute was merely declaratory of a common law principle" a right to sue may continue after repeal). Moreover, a statute's language "must be given its plain meaning[] where [its] meaning is clear and unambiguous." *Saipan Achugao Resort Members' Ass'n v. Yoon*, 2011 MP 12 ¶ 23 (internal quotation marks omitted). Read together, these principles of construction emphasize the importance of the law as it is written, rather than the procedure taken to develop it. *See Bank of Hawaii v. Sablan*, 1997 MP 9 ¶ 10 (stating that statutory language comes first in the analysis). Finally, "absent an indication that the legislature intends to supplant common law, the courts should not give it that effect." *Peter-Palican v. Northern Mariana Islands*, 2012 MP 7 ¶ 6 (internal quotation marks omitted).

Here, there is nothing ambiguous about the Lifeguard Act of 1998: if a hotel or property owner charges customers to use its swimming pool, it must keep a lifeguard on duty during open hours or risk a $100 fine for each violation. 3 CMC §§ 5502-04. Despite its purpose statement somewhat to the contrary, when the legislature removed beachfront owners from the statute, it simply relieved them of a similar obligation. Nothing in the statutory language suggests that the legislature intended to shield beachfront owners from common law negligence liability. At most, the legislature relieved beachfront owners from possible negligence per se liability. *See Atalig v. Mobil Oil Mariana Islands, Inc.*, 2013 MP 11 ¶ 30 (stating that negligence per se substitutes "a statutory standard of care for the common law standard of care"); Restatement (Third) of Torts: Liab. for Physical and Emotional Harm § 14 ("An actor is negligent if . . . [he] violates a statute that is designed to protect against the type of accident the actor's conduct causes, and if the accident victim is within the class of persons the statute is designed to protect").

In sum, contrary to Tasi Tours' contentions, the Lifeguard Act of 1998 had no effect on common law negligence liability as the rule in beachfront lifeguard negligence cases.

*e. DPL Regulation*

DPL regulation requires Tasi Tours, as concessionaire, to "provide a lifeguard to supervise the activities of those persons using the roped-off swimming zone." NMIAC § 145-30-135(b). It also provides that "[t]he concessionaire and [DPL] shall not be responsible for lifeguarding the activities of users of watercraft or swimmers outside the swimming zone." NMIAC § 145-30-135(c).

Tasi Tours argues that the regulation immunizes it from liability for swimming accidents outside the swimming zone. (Reply 4-5.) After all, if Tasi Tours is not "responsible for lifeguarding . . . swimmers outside the swimming zone," then how could it be held liable for failing to do just that?

There are two reasons to reject Tasi Tours' argument: (1) the regulation does not express DPL's intent to disturb common law negligence principles, but rather its intent to establish baseline rules governing Managaha Island; and (2) even if DPL indeed intended to limit the concessionaire's potential negligence liability, the agency lacks statutory authority to alter the tort laws of Commonwealth, and any attempt to do so would be ultra vires and null.

As stated above, a statute or regulation does not alter the common law unless its intent to do so is clear. *See Commonwealth of the Northern Mariana Islands v. Hasinto*, 1 N.M.I. 179, 181 (1990) ("In the absence of a clear indication that the NMI legislature sought to supplant the common law . . . we are not persuaded that it intended to do so."); *Dong v. Royal Crown Ins. Corp.*, Civ. No. 09-0035, 2010 WL 4072285, at *11, (D.N.M.I. Oct. 18, 2010) (stating that a "statute must be contrary to common law to supplant it") (internal quotation marks omitted). Therefore, the mere

8

fact that a law is "written" is insufficient to replace the common law. *See* 7 CMC § 3401.

Here, the Court finds no intent on DPL's part to limit common law negligence liability for the Managaha Island concessionaire. The regulatory language in question is part of a broad set of rules establishing the concessionaire's overall operations on Managaha Island. *See* NMIAC § 145-30-010 ("The purpose of [these] rules and regulations . . . is to set forth certain restrictions on commercial activities on Managaha Island . . . and for other miscellaneous purposes related to these activities"). For instance, the regulations establish a single concessionaire (§ 145-30-101), provide for the concessionaire's "management and maintenance" of the island (§ 145-30-110), set hours of operation (§ 145-30-120), govern signs and advertisements (§ 145-30-125), and provide for public safety (§ 145-30-135). Importantly, the regulations create standards to which DPL holds the concessionaire, and vice versa. *Compare* NMIAC § 145-30-115 (stating that when a typhoon condition is declared, "the concessionaire shall be relieved of its obligations to operate the utilities on the island"), *with* § 145-30-301 (stating that DPL shall notify the concessionaire "no less than [30] days prior" to a closure of the island for a "cultural event"). In other words, like the concession agreement, the regulations provide the structure of the relationship between Tasi Tours and DPL. They do not dictate a departure from the common law of negligence by their express language or unavoidable implication. *See Dong*, 2010 WL 4072285, at *11.

Because DPL's intent in promulgating the regulations was to govern its relationship with the concessionaire and set basic rules for Managaha Island, rather than to alter the common law of torts, the regulatory language cited by Tasi Tours can be placed in its proper context. If Tasi Tours failed to provide a lifeguard to the roped-off swimming zone, DPL could presumably force it to do so. NMIAC § 145-30-135(b). However, DPL has no recourse against Tasi Tours if the company fails to lifeguard other areas of the island. NMIAC § 145-30-135(c). Similarly, Tasi Tours has no

recourse against DPL for harms resulting from DPL's failure to lifeguard other beaches. *Id.* (stating that neither the concessionaire nor DPL is responsible for lifeguarding swimmers outside the roped-off zone). Having examined the scope of the entire regulation, the Court finds that DPL only intended to establish its rights vis-à-vis the concessionaire, and not limit third party suits.

Finally, even if DPL had promulgated its regulation with the intent to shield the concessionaire from common law liability, it was without the statutory authority to do so, and the regulation cannot have that effect. *See Santos v. Public School System*, 2002 N.M.I. 422, 429 (2002) (finding a regulation purporting to expand a statutory requirement as "ultra vires and null"). DPL was established to "manage and administer the Commonwealth's public lands under the provisions of Article XI of the Constitution." 1 CMC § 2801. It is responsible for "the administration, use, leasing, development, and disposition of [public lands]." 1 CMC § 2806. Nothing in DPL's authorizing statute delegates to the agency the legislative power to alter tort law—DPL is instead invested with authority to dispose of public land in accordance with the statute. *See* 1 CMC §§ 2806-08 (limiting DPL's discretion to dispose of Commonwealth public land and empowering the agency to enforce certain rules). Because DPL lacked statutory authority to alter negligence liability, any attempt to do so cannot be the law. *See Santos*, 2002 N.M.I. at 429.

### f. Common Law Negligence

There is no "written law" in the Commonwealth that addresses a landowner's duty to provide a lifeguard at its beach. Accordingly, the Court must rely on the common law as provided in the ALI's restatements. *See* 7 CMC § 3401. In particular, this matter is principally controlled by the Restatement (Third) of Torts: Liability for Physical and Emotional Harm ("Restatement (Third)" of Torts), and the Restatement (Second) of Torts to the extent it is not replaced by its

more recent successor.

Tasi Tours' motion asks the Court to find that it did not have a duty to exercise reasonable care with respect to Dao. (Reply 2-4, 6-12.) Tasi Tours argues that it did not engage in any conduct toward Dao that created the risk of her drowning, and that it had no duty to her as a land possessor. (*Id.* at 2-4, 6-7.) The Court finds that Tasi Tours owed Dao a duty of reasonable care because it is a land possessor of Managaha Island for negligence purposes. Because the Court finds that Tasi Tours owed Dao a duty of reasonable care pursuant to negligence rules for land possessors, it is unnecessary to determine whether it alternatively owed Dao a duty of reasonable care based on the alleged risk it created by actively encouraging people to visit Managaha Island to engage in water activities. *See* Restatement (Third) of Torts § 7 ("An actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm.").

The Restatement imposes a duty of reasonable care on land possessors. *See* Restatement (Third) of Torts § 40(b)(3) (providing that "a business or other possessor of land that holds its premises open to the public" has a duty of reasonable care to "those who are lawfully on the premises"), § 51 (providing that "a land possessor owes a duty of reasonable care to entrants on the land with regard to: . . . (c) natural conditions on the land that pose risks to entrants on the land"). A land possessor is a "person who occupies the land and controls it." *Id.* at § 49(a) & cmt. c ("A person is in control of the land if that person has the authority and ability to take precautions to reduce the risk of harm to entrants on the land, which is the reason for imposing the duties contained in this Chapter on land possessors."). A possessor of land need not be the owner or legal title holder of the land if another exercises occupation and control. *Id.* at § 49 cmt. b.

In a broad sense, Tasi Tours occupies and controls Managaha Island as a possessor of land. It cleans the entire island on a daily basis, maintains the concession area and "other improvements

11

on the island," provides nighttime security, and tends to all vegetation and nature trails. Concession Agreement 6-7. Managaha Island is open to the general public from 7:00 a.m. to 6:00 p.m., and although Tasi Tours lacks the authority to choose who visits the island during that time, tourists are required to pay a landing and user fee to DPL rangers when they arrive on the pier. *Id.* at 4, 8-10). That fee in turn pays for Tasi Tours to maintain the island, as well as the DPL rangers' salaries. Amended Agreement 6-9.

Of course, the most important aspect of Tasi Tours' control of Managaha Island for this case is its authority and ability to decrease the probability of swimmers drowning by posting lifeguards in popular areas. *See* Restatement (Third) of Torts § 49 cmt. c. The Restatement imposes the duty of reasonable care on a land possessor when the possessor can decrease the risk of harm to entrants. *Id.* As described above, nothing in the concession agreement, its amendments, DPL regulation, or Commonwealth statute prevents or in any way limits Tasi Tours from lifeguarding areas outside the zoned swimming area.[4] *See* NMIAC § 145-30-135. Accordingly, because Tasi Tours controls and can reduce the risk to swimmers on Managaha Island, it is a land possessor and owes its entrants a duty to exercise reasonable care. *See* Restatement (Third) of Torts § 40(b)(3) (businesses open to the public owes a duty of care to that public on its premises) & cmt. j ("This Section imposes an affirmative duty on a subset of land possessors for certain risks that do not arise from conditions or activities on the land."), § 51 (land possessor owes duty of reasonable care to entrants for natural risks on the land) & cmt. k ("When land is held open to the public and a

---

[4] At the hearing, the parties considered whether the landing and user fees could be used to pay lifeguards outside the zoned swimming area. It does not appear that the concession agreement or its amendment considered that possibility. *Compare* (Amended Agreement 9) ("The cost of nighttime security, lifeguards, and rangers may be paid from the Landing and User Fee as each provides for public safety under Section 9(D) of the Agreement") *with* (Concession Agreement 14 (stating that the "[c]oncessionaire shall provide a lifeguard to monitor, patrol, and supervise the activities of people using the zoned swimming area"). Whether or not Tasi Tours could utilize the landing and user fees for extra lifeguards, however, does not affect whether a duty of care exists. *See* Restatement (Third) of Torts § 3 (stating that "the burden of precautions to eliminate or reduce the risk of harm" is one factor in determining whether an actor exercised reasonable care).

high volume of entrants can be anticipated, a reasonable possessor should anticipate greater risk, requiring greater precaution than if the land is private or few entrants are likely.").

Tasi Tours argues that it owed no duty of reasonable care to Dao with respect to lifeguards because (1) she drowned in the water, not "on the land," and (2) Tasi Tours cannot control the ocean. (Reply 6-12.) Neither argument persuades the Court.

First, Tasi Tours argues that land possessor duties are limited to harm "on the land," and that because Dao drowned in the water and not on the land, Tasi Tours owed her no duty. (Reply 6); *see* Restatement (Third) of Torts § 51(c) (duty owed when "natural conditions on the land . . . pose risks to entrants on the land"). In other words, Tasi Tours argues that the plain language of the Restatement does not apply to the facts alleged in this case. That literalist interpretation does not survive scrutiny.

Taking Tasi Tours' argument to its logical conclusion, the Restatement (Third) must have—without comment—eliminated land possessor liability for any drowning in a body of water. After all, if a person drowns in a pond, swimming pool, lake, river, rain puddle, aquarium, or other water feature, then that person must not have been "on the land," but rather "in the water." Unsurprisingly, Tasi Tours presents no support in caselaw or comment for its proposition. More sensibly, bodies of water, like all other hazards to be mitigated by the land possessor duty, exist on the land themselves. Accordingly, a body of water is a "natural condition on the land" that can give rise to land possessor duty. Restatement (Third) of Torts § 51(c). In short, the fact that Dao was "in the water" when she drowned has no bearing on whether she was also "on the land" for purposes of Tasi Tours' duty to exercise reasonable care.

Second, Tasi Tours argues that it is not a land possessor because it cannot exercise control over the ocean. (Reply at 8-12; *see* Opp'n at 4-5). Therefore, it has no land possessor duties. (*Id.*)

13

In support of its proposition, Tasi Tours cites several cases from other jurisdictions: *Darby v. Compagnie Nat'l Air France*, 753 N.E.2d 160 (N.Y. 2001); *Swann v. Olivier*, 28 Cal. Rptr. 2d 23 (Cal. Ct. App. 1994); *Princess Hotels International v. Superior Court*, 33 Cal. App. 4th 645 (Cal. Ct. App. 1995); and *Estate of McFarlin v. Lakeside Marina, Inc.*, 979 F. Supp. 2d 891 (N.D. Iowa 2013). Again, the Court is not convinced.

In *Darby*, the New York Court of Appeals considered whether an innkeeper owed a duty to warn its guests of dangerous surf conditions across the street at a public beach owned and lifeguarded by the Brazilian government. 753 N.E.2d at 161-62. Although the innkeeper provided chairs and umbrellas to its guests to use at the beach, because the innkeeper did not "own or control" the beach, the Court of Appeals held that it owed no duty to warn its guests about rip currents. *Id.* at 162 (but noting that New York law allowed for negligence actions where an innkeeper maintained control of the premises, such as "failure to warn of dangerous condition on resort walking path," "failure to protect children at play on resort grounds from traffic on private resort road," "failure to keep inn sidewalk free of ice," "failure to supervise hotel swimming pool," and "failure to safeguard against fire inside hotel") (citations omitted).

To the extent that *Darby* tracks the Restatement rule that duty follows control in land possessor liability cases, it is persuasive. However, the facts in *Darby* differ substantially from this case. In *Darby*, the innkeeper had no presence on the beach area itself and did not occupy and control it; it was the Brazilian government that owned and maintained the beach and employed the lifeguards and rescue personnel. The innkeeper lacked the authority or ability to mitigate risks at the Brazilian government's beach. Here, Tasi Tours dominates Managaha Island and provides security, cleaning, and limited lifeguarding. Unlike the innkeeper in *Darby*, Tasi Tours has substantial control over Managaha Island, including the authority and ability to take precautions.

14

*See* Restatement (Third) of Torts § 49 cmt. c.

In *Swann v. Olivier*, a guest at a beach party was injured in the surf and sued the host of the party and her homeowner's association for failing to warn him of the dangers posed by "riptides, submerged rocks[,] and a hazardous drop-off." 28 Cal. Rptr. 2d at 23-24 (Cal. Ct. App. 1994). Applying "basic principles" and "common sense," but not the Restatement, the Court held that there was no duty to warn of surf dangers because no one can "control" the ocean. *Id.* at 26, 28 ("The idea that [defendants] can control the ocean adjacent to their land is nothing short of ludicrous."). Similarly, in *Princess Hotels Int'l, Inc. v. Superior Court*, a guest at the defendant hotel was injured (and her husband killed) when they went swimming in the ocean adjacent to the hotel. 33 Cal. App. 4th at 646-47. The beach upon which the plaintiff ventured was owned by the Mexican government, not the defendant hotel, but rather than addressing the fact of who occupied and controlled the beach, the Court of Appeals based its holding on the impossibility of any human in controlling the surf. *Id.* at 650-51 ("[U]nder the *Swann* analysis the ocean itself, the situs of the injury and death, was not under the control of the hotel").

Quite simply, *Swann* and *Princess Hotels* do not reflect the law under the Restatement (Third) of Torts. A land possessor "controls" land when he "has the authority and ability to take precautions to reduce the risk of harm to entrants on the land, which is the reason for imposing the duties contained in this Chapter on land possessors." Restatement (Third) of Torts § 49 cmt. c. *Swann* departs from the Restatement by requiring absolute control in order to find a duty—"even the fabled King Canute with all his power could not control the water by fiat"—when the analysis should focus instead on the putative land possessor's authority and ability to mitigate risks. *See* 28 Cal. Rptr. 2d at 28 (internal quotation marks omitted). To the extent that lifeguards tend to reduce the risk of drowning or ocean-based injury, despite the ocean's uncontrollable nature, a

15

land possessor occupying land on the beachfront may exercise "control" over its waters for purposes of the Restatement commensurate with the possessor's ability to reduce the risk. That area of control limits the duty of reasonable care (including warnings).[5] Therefore, if *Swann* had been a Restatement case, the appropriate question would have been whether the beach party host or homeowner's association had the authority and ability to reduce the risk of the surf dangers. If so, then they had a duty to exercise reasonable care. The same analysis would apply to *Princess Hotels*: if the hotel had authority and ability to reduce risk on the Mexican government's beach, then it had a duty to do so. *See* 33 Cal. App. 4th at 651.

Finally, in *Estate of McFarlin v. Lakeside Marina, Inc.*, a boat hit a "submerged dredge pipe," which "caus[ed] the boat's motor to flip up into the boat" where it struck and killed a ten-year-old boy. 979 F. Supp. 2d at 892. The boy's estate sued the marina (Lakeside) from which the boat had launched for failure to warn his family about the dredging operation, although Lakeside had no affiliation with the dredging operators. *Id.* Citing *Swann*, the Court in *McFarlin* held that Lakeside had no control over the dredging operation, and therefore had no duty to warn of the dredging dangers. *Id.* at 899-900 ("Lakeside was not privy to the dredge operator's daily plans for and movement of the dredging operations").

Applying the Restatement to the facts, the pertinent question is whether Lakeside had the authority and ability to take steps to reduce the risk of boating dangers based on the dredging operations. Because Lakeside had no connection to the dredging operations, which were located on a different part of the lake from the marina, Lakeside could not have reduced any risk having

---

[5] Determining the scope of control cannot depend on whether a warning would tend to ameliorate some risk, but rather whether the possessor has authority and capability to reduce the risk in other ways. Obviously, anyone with knowledge of a hazard *anywhere* could potentially reduce the risk of harm to others by broadcasting that knowledge. But to place a duty on the knower to disclose that risk, when it has nothing to do with his occupancy and control of land or the presence of an entrant, would fundamentally alter negligence law and wildly depart from the norm. *See* Restatement (Third) of Torts § 37 (affirming the general rule that a person does not owe a duty of reasonable care to another unless his actions created a risk of harm).

to do with the operations, and therefore had no duty to exercise reasonable care with respect to that risk, including a duty to warn. *See id.*; Restatement (Third) of Torts §§ 49, 51.

The present case is dissimilar from those cited by Tasi Tours. Here, Tasi Tours controlled the beach surrounding Managaha Island because it had the authority and ability to reduce ocean-related risks by posting lifeguards. *Id.* at § 49. As a land possessor, Tasi Tours owed a duty of reasonable care to Dao, an entrant, with regard to the natural sea conditions on the land. *Id.* at § 51(c). The fact that the injury in this or any of the cited cases took place "out on the water," as Tasi Tours argues, has no talismanic value in determining duty. The issue is control, and Tasi Tours had it. Restatement (Third) of Torts § 49 cmt. c.

### g. CNMI Public Policy

Finally, the parties argue that Commonwealth public policy favors their arguments for imposing or refusing to impose a duty of reasonable care with respect to lifeguards. (Opp'n at 10-13; Reply at 12-15.) The arguments are primarily based on the Lifeguard Act of 1998. Plaintiff Wang argues that the "purpose" statement of the Act urges the protection of beaches (Opp'n at 10-11), while Tasi Tours asserts that the operative language of the statute only applies to commercial swimming pools (Reply at 12-15).

The Court finds that the Commonwealth has not adopted a public policy about lifeguarding beaches. The Lifeguard Act of 1998 voices concern for beachside safety, but only applies to swimming pool lifeguards. *Cf. Diamond Hotel v. Matsunaga*, 4 NMI 213, *12 (1995) ("Even where a contract provision does not by its terms squarely violate legislation, it may, nevertheless, be unenforceable if it contravenes a public policy behind such legislation."). Similarly, for the reasons discussed above, the repeal of the affirmative duty to provide lifeguards at beaches says nothing about the legislature's public policy preference. Where there is inadequate information to

determine public policy, the Court must fall back on the Restatement. *See* 7 CMC § 3401. The Court's Restatement analysis controls.

## IV. CONCLUSION

To be clear, the issue raised in Tasi Tours' motion to dismiss is whether Tasi Tours owed a duty of reasonable care to Dao. Based on Tasi Tours' status as a land possessor, it did. Whether Tasi Tours breached its duty by failing to post lifeguards as suggested by Wang is not a matter of duty, but of reasonable care. The question of reasonable care—whether Tasi Tours' decision not to post lifeguards was reasonable—was not addressed in the briefs and is not addressed here. *See* Restatement (Third) of Torts § 3 ("Primary factors to consider in ascertaining whether the person's conduct lacks reasonable care are the foreseeable likelihood that the person's conduct will result in harm, the foreseeable severity of any harm that may ensue, and the burden of precautions to eliminate or reduce the risk of harm."); *United States v. Carroll Towing Co.*, 159 F.2d 169, 173 (2d Cir. 1947). Whether deploying lifeguards to watch the area in which Dao drowned would have been reasonable based on the Restatement's factors is a jury question. The Court's conclusion only addresses the existence of Tasi Tours' duty owed to Dao.

Accordingly, Tasi Tours' motion to dismiss (ECF No. 7) is denied.

SO ORDERED this 13th day of April, 2015.

RAMONA V. MANGLONA
Chief Judge